JAMES HAWKINS v. N. M. PEPPER et al.

*Mineral Rights—Contract—Conveyance—Condition Sub-
sequent—Forfeiture—Re entry by Grantor.*

1. Where an interest in land is conveyed for a nominal considera-
tion and is subject to be defeated by failure to perform a con-
dition subsequent which constitutes the real consideration
on the part of the grantor for executing the conveyance, the
courts will adjudge that the grantee, if he has taken no steps
in a reasonable time looking to and giving promise of a com-
pliance with it, has abandoned the purpose of performing it.

2. Although apt words usually employed in creating conditions
subsequent may not be used in a contract or conveyance,
yet, if the performance or non-performance of an act named
is the only consideration or inducement for executing the
deed, it should ordinarily be construed as a condition.

3. Where an instrument conveying the mineral rights in land,
after reciting a nominal consideration, declared that the
grantor should have "full power to convey," and the gran-
tee stipulated that he would examine the land, and, if he
found valuable minerals, would pay the grantor one-half the
net proceeds thereof, or, should such grantee convey to third
persons, he would pay the grantor $200 and one-half the net
proceeds of the sale; *Held*, that the rights of the grantee
under such instrument were forfeited by his failure, for eight
years, to open the mine and prepare it for sale.

4. Where a conveyance of mineral rights in land is defeated by the grantee's failure to perform the particular acts stipulated to be done by him in the instrument itself, and which form the real consideration therefor, a re-entry by the grantor is unnecessary.

CIVIL ACTION, tried before *Brown, Judge,* and a jury, Fall Term, 1895, of STOKES Superior Court.

The defendant, Pepper, was allowed to come in and be made a defendant, as the alleged landlord of the defendant Martin, claiming the property in dispute ; whereupon the trespass was claimed to have been committed by virtue of a certain paper writing or contract, under seal, executed between the plaintiff and said Pepper, a copy of which is set up in the defendant's answer, and marked "Exhibit A."

The following issues were submitted without objection :

"1. Were the words 'five years,' whereby the duration of Pepper's rights under the written deed of October 20th, 1882, was to be limited to that period, omitted from the said paper-writing by the fraud and imposition of the defendant, N. M. Pepper, the draughtsman thereof, and the mistake of the plaintiff?

"Answer. 'No.'

"2. Has the defendant, the said Pepper, forfeited all rights under said contract of October 20th, 1882, for failure to operate or sell said mine ?

"Answer. 'Yes.'

"3. Did the defendant during 1894, shortly before the commencement of this action, wrongfully and unlawfully enter upon the said lands of the plaintiff, as alleged in the complaint ?

"Answer. 'Yes.'

"4. What damage has the plaintiff sustained by said trespass, if any ?

"Answer.   'One penny.'"

The defendant, in apt time, objected to the submission of issue No. 2, upon the ground that said paper-writing of October 20th, 1882, was a deed of bargain and sale, and the estate of Pepper therein could not be forfeited.

Objection overruled ; exception by defendant.

James Hawkins testified in his own behalf:  That he was in possession, and had been for a long number of years, of a farm and a tract of land, whereon he resided, in the county of Stokes, in which was situated the mica mine and mineral property, described in the said paper-writing of October the 20th, 1882 ; that he signed and executed said paper writing, and delivered it to N. M. Pepper.  That the said Pepper and his associates commenced to operate said mine, and did operate it continuously up to and including the year 1885.   The last work was done on the mine in 1885 ; since then they have not operated the mine at all.

I notified the defendants, about three months before this suit was brought, to keep off this land, and demanded said paper-writing to be surrendered.  After I notified them, they commenced to work a part of each day and put the defendant Martin there to work.  It was eight years, during which they did not work at all.  I brought this suit and got an injunction and stopped it.

The defendants, in due time, objected to all of the above testimony as to non-user and abandonment.   Objection overruled, exception by defendant.

There was much other testimony given by the plaintiff, as well as the defendants, in regard to the first issue, which it is unnecessary to set out.

The defendant, N. M. Pepper, and his witness, James A. Pepper, testified:  That immediately upon the execution of the contract, dated October the 20th, 1882, a copy

of which is made a part of defendant's answer, they began to work in the mine, on the lands of the plaintiff, and got out a considerable amount of mica, and continued to work said mine until about the month of August, 1886, when it was found unprofitable to work the mine, and it was discontinued and not regularly worked again until the year 1894, except on several occasions; during that period, the defendants got out some specimens of mica in order to sell the mine. In 1894 they put the defendant, Martin, there to work. That, ever since 1882, the defendant, N. M. Pepper has made many efforts to sell the mine, and has, during the time, sent specimens of the mica over the country, and written a great many letters, offering the mine for sale, and has at times obtained proposals for the purchase, which fell through, and as yet has not been able to sell the property. That, in 1893, they were negotiating a sale, but it fell through.

At the close of the evidence, the court instructed the jury that upon the entire evidence, they should answer the second issue, Yes. The jury rendered a verdict for the plaintiff.

Defendant moved for a new trial, assigning errors as follows:

"1. Error in the admission of evidence on behalf of the plaintiff, tending to show that the defendant, N. M. Pepper, had failed to work the mine between August, 1886, and 1894.

"2d. For error in submitting issue No. 2. For error in charge of the court as to issue No. 2, as above set out."

Motion overruled. Judgment for the plaintiff and defendant appealed.

Exhibit A. was as follows:

"STATE OF NORTH CAROLINA,
            "STOKES COUNTY, October 20th, 1882.
  "*Know all men by these presents*, That I, James Haw-
kins, of the county of Stokes, and State of North Carolina,
of the first part, for and in consideration of the sum of one
dollar, to us in hand paid by N. M. Pepper of the county
and State aforesaid, of the other part, the receipt whereof
is hereby acknowledged, have this day bargained and sold,
and by these presents do bargain and sell unto N. M. Pep-
per, his heirs and assigns, all our right, title, interest and
claim in and to all the iron, copper and lead ores, and also
all other minerals that may be found in, on and appertain-
ing to the lands of the said James Hawkins, lying in the
county of Stokes, on the waters of Raccoon Creek, adjoin-
ing the lands of Joel Hawkins and Joseph Hutchins,
beginning at Joel Hawkins' line, thence up the creek to the
mouth of the Little branch; thence up the branch as it
meanders to the head of said branch; thence south to Joel
Hawkins' line; thence with his line to the beginning, sup-
posed to contain five acres: with the privilege of ingress
and egress, entering on any part of said land and premises
to dig, mine and carry away any of said minerals, ores or
metals, and to build machinery of any kind, use any water
power for any purpose, build and use tram, rail and other
roads, over any part of said land, with the right to use any
timber, or other material necessary to the mining and
working of said minerals to fit the same for any market, all
of which rights and privileges, the said N. M. Pepper, his
heirs or assigns, shall have the full power to convey to
other party or parties.  For the consideration aforesaid,
the said N. M. Pepper agrees to make, or cause to be made,
examination of the aforesaid lands, and, if any valuable
minerals are found, shall pay the said James Hawkins one-
half of the net amount he may receive for the said minerals

HAWKINS v. PEPPER.

or metals; or, in case the said N. M. Pepper shall convey the rights and privileges hereby granted to other party or parties, then and in that case, he, the said N. M. Pepper, shall pay the party of the first part two hundred dollars, and in addition thereto shall pay the said party of the first part one-half the remainder of the net amount he may receive for the said minerals and privileges, after deducting the expense of developing the same, erecting machinery, etc.

"In witness whereof, we have hereunto set our hands and seals,. the day and year first above written.

"Witness:                    JAMES HAWKINS.   [SEAL.]
    "JAMES A. PEPPER,        N. M. PEPPER.     [SEAL.]"
    "JAY W. PEPPER.

*Messrs. Watson & Buxton* and *A. M. Stack*, for plaintiffs.

*Messrs. W. W. King* and *Glenn & Manly*, for defendants (appellants).

AVERY, J.: It is a well settled principle that where an estate or interest in land is conveyed for a nominal consideration and is subject to be defeated by failure to perform a condition subsequent which constitutes the consideration on the part of the grantor for executing the deed conveying it, a reasonable time will be allowed for its performance, after which the courts will adjudge that the grantee, if he has taken no steps looking to and giving promise of a compliance with it, has abandoned the purpose to perform it. *Ross* v. *Tremaine*, 2 Met., (Mass.) 495; *Allen* v. *Howe*, 105 Mass., 241; 6 Am. & Eng. Enc., p. 903, note 1; 2 Washburne (5th Ed.) p. 12, star pp, 449, 450; *Austin* v. *Cambridgeport Parish*, 21 Pick. (Mass.) 215.

It is familiar· learning that certain apt words will always

be construed to create a condition subsequent. But 'deeds and leases are contracts and that before us for interpretation contains mutual stipulations and is signed by both of the parties to it. A contract may be construed by looking to all parts of the instrument embodying it, in order to ascertain whether the parties intended to create such conditions, though they may have failed to use the apt words usually employed. 2 Washburne R. P., p. 27, star p. 459 ; 1 Wood on L. & T., Sec. 233, p. 502 ; 5 Lawson's Rights & Rem., Sec. 2511. Though neither the words "on condition," "provided always," "if it shall so happen" nor other equivalent expressions appear in the instrument, and though no clause of re-entry be inserted and yet it appears "that the performance or non-performance of an act named is the only consideration or inducement for executing the deed, it should ordinarily be construed as a condition." 6 Lawson's R. & R., Sec. 2760, p 4499 ; *Railroad Co.* v. *Hood*, 66 Indiana, 580, cases cited, p. 585.

The agreement which gives rise to the controversy, recites in the first paragraph a nominal consideration for conveying the mineral interest in a certain tract of land with rights of ingress and egress, to work the same and to use "any timber or other material thereon to fit the same for market,"&c. The grantor adds at the conclusion of the stipulations that "the said N. M. Pepper (the grantee) his heirs or assigns, shall have *full power to convey to other party or parties.*" The agreement on the part of the defendant .Pepper is as follows : "For the consideration aforesaid, the said N. M. Pepper agrees to make, or cause to be made, examination of the aforesaid lands, and if any valuable minerals are found, shall pay the said James Hawkins one-half of the net amount he may receive for the said minerals or metals ; or, in case the said N. M. Pepper shall convey the rights and privileges hereby granted to

other 'party or parties, then and in that case, he, the said N. M. Pepper, shall pay the party of the first part two hundred dollars, and in addition thereto shall pay the said party of the first part one half the remainder of the net amount he may receive for the said minerals and privileges, after deducting the expense of developing the same, erecting machinery," etc.

The defendant contends that the instrument is to be construed as an absolute deed to the fee simple in the mineral interest; but if the parties intended that the agreement should operate as an indefeasible conveyance, it is difficult to conceive why the power to convey should be given, as a conclusion to the mutual stipulation of the plaintiff, to one, who was already the absolute owner of the interest which he was empowered to alien. This provision is utterly irreconcilable with any other mutual understanding, but that the title was conveyed to the defendant in order that, after working it and paying over the royalty agreed upon (one-half the net amount received for minerals sold) the said N. M. Pepper should be empowered to sell the developed mine upon paying two hundred dollars, and in addition one-half of the net proceeds of the sale to the plaintiff. If the contention of defendant's counsel is correct, Pepper has aquired the absolute right to the mineral interest in the land for a mere nominal consideration, while his covenant to pay half the net proceeds of minerals taken out or of a sale of the whole interest is a mere personal covenant to be performed whenever he or his heirs may see fit to work the mine, or develop and sell it. In *Maxwell* v. *Todd*, 112 N. C., 678, the operative words in the instrument construed to be a lease forfeitable for non user, were "hereby leases and by these presents does grant and convey to the said parties of the second part their heirs, executors administrators and assigns."

The term was declared to be 99 years, the object mining for minerals, the royalty one-tenth of the net proceeds of all minerals taken out, and the consideration as in this case one dollar. It was held there that the instrument should be construed as though a clause of defeasance or forfeiture had been expressly embodied in the deed. The same principle is declared applicable to mining leases in *Conrad* v. *Morehead*, 89 N. C., 31.

We conclude that there was manifestly no intent to vest in the defendant Pepper an absolute and indefeasible estate for the nominal consideration, but that it was the mutal understanding that the fee should pass to him for the temporary purpose of selling within a reasonable time, and that meantime there was an implied condition attached that he should not abandon the work of opening and developing the mine, so that it should be fitted for active operations by Pepper or for examination with a view to purchase by others. The performance of the agreement to open the mine and prepare it for sale was the only inducement to convey, and the facts bring the case within the just principle already stated. The failure by Pepper, according to his own testimony, to work the mine for the years 1886 to 1894 operated in contemplation of law as a forfeiture of his rights under the contract, just as though an express provision had been inserted in it that he should forfeit all rights acquired under it if his running operations should be abandoned for a reasonable time. When his rights were once so lost, it was not necessary for the plaintiff to re-enter, since the estate had vested in Pepper for a particular purpose which appeared upon the face of the instrument, and not subject only to the preformance of an act to be done *dehors*, which should give the right of re-entry and render it necessary to assert the claim to the forfeiture by some such public act.

There was no error in the instruction given to the jury, in effect, that in any aspect of the evidence the rights acquired by Pepper under the deed had been forfeited.

Affirmed.