HELMS v. HELMS.

(Filed April 26, 1904).

1. ISSUES—*Trial.*

The refusal to submit issues, the answers to which would not affect the result, is not error.

2. REFORMATION OF INSTRUMENTS—*Evidence—Deeds—Mistake.*

The evidence of a statement by a grantor to a grantee at the time of the delivery of a deed that it should be void if the grantee did not support the grantor, is not sufficient evidence to show that this condition was omitted from the deed by mistake.

3. DEEDS—*Covenants—Consideration—Subrogation.*

Where the grantee in deed agrees, as a part of the consideration, to support the grantor, which he fails to do, and the grantor executes another deed to a third person, the second grantee is not subrogated to the rights of the grantor to enforce her claim for support.

4. ESTOPPEL—*Deeds—Declarations.*

A declaration, by a grantee in a deed duly recorded, to the effect that he does not claim any interest in the land conveyed, does not operate as an estoppel *in pais* in favor of a subsequent grantee from the same grantor, having actual notice of the prior deed.

CLARK, C. J., dissenting.

ACTIONS by W. L. Helms against Henry Helms and others, heard by *Judge H. R. Bryan* and a jury, at February Term, 1904, of the Superior Court of UNION County. From a judgment for the plaintiff the defendants appealed.

*Redwine & Stack,* for the plaintiff.
*Adams, Jerome & Armfield,* for the defendants.

CONNOR, J.  Elmira Helms, being the owner of an undivided one-sixth interest in the *locus in quo,* executed a deed

on August 14, 1897, to William L. Helms, conveying such interest to him in consideration of "One dollar to her paid by William L. Helms, the receipt of which is hereby acknowledged, and the further consideration of the support during the natural life of the party of the first part." Following the covenant of warranty are these words: "And it is further understood and agreed between the parties that the above lands shall stand good for the support and maintenance of the said Elmira Helms during her natural life." This deed was recorded August 14, 1897.

On August 17, 1898, the said Elmira conveyed her one-sixth interest in a part of the land to Gabriel W. Helms. This interest was afterwards conveyed to defendant Haney Helms. Elmira died February 3, 1903. W. L. Helms. on April 7, 1903, brought this special proceeding, making the other tenants in common parties defendants, for the partition of the land, claiming one-sixth interest therein by virtue of said deed from Elmira. The defendant Haney Helms filed a separate answer denying that the said William L. owned any interest in the land, for that in the execution of the deed it was understood and agreed that the consideration thereof was the future support and maintenance of the said Elmira by him, and that he undertook and agreed that he would support her during her natural life, and if he failed to do so said deed would be void. He also says that such condition should have been inserted in the deed, but was omitted by "inadvertence or otherwise" of the draughtsman. That he never supported the said Elmira and disclaimed having any interest in said land. He sets up the deed from Elmira to Gabriel, and the heirs of Gabriel to himself, for her undivided interest in the land. He further says that the real owners of said land have made partition thereof and are in possession of their respective shares. He asks that the deed from Elmira to the plaintiff

be cancelled, etc. By an amended answer the defendant Haney says that the plaintiff failed and refused to support the said Elmira, and that in her last sickness she required attention, etc., amounting in value to $10 per month, and that by reason thereof the land became subject to a charge of several hundred dollars. That by the deed of Elmira to Gabriel Helms, and from the heirs of Gabriel to him, he is subrogated to the rights of Elmira, "in and to the charge on the land for the support, etc., of said Elmira," and he hereby pleads the same as an estoppel or bar to any claim for the said land by the said W. L. Helms." The plaintiff filed a reply to the new matter set up in the answer denying same. The cause was transferred to the civil issue docket for trial. The plaintiff tendered the following issue: "Is the plaintiff the owner and entitled to be let into possession of the one-sixth interest in the land described in the complaint ?"

The defendant tendered several issues directed to the inquiry whether there was an agreement between Elmira and W. L. Helms that the deed should be void if W. L. Helms failed to support said Elmira, and whether such agreement was omitted by the mutual mistake or ignorance of the parties or of the draughtsman, also whether W. L. Helms supported said Elmira, and the value of such support. His Honor declined to submit the issues tendered by the defendant and adopted that tendered by the plaintiff. Defendant excepted. In respect to the first two issues tendered by the defendant, it is sufficient to say that if found in the affirmative such finding could not have affected the result or judgment. It would have amounted simply to a finding that the parties made an agreement and that they failed to insert it in the deed. The proposition is stated by the defendant when he placed M. L. Flow upon the stand and proposed to prove by him that he "drew the deed, and

that Elmira stated to W. L. Helms at the time, and before delivering the deed, that the deed should be void if W. L. Helms failed to provide for and take care of Elmira." There is no suggestion in the evidence offered that there was any agreement or understanding that the provision should be put in the deed, or that the draughtsman was instructed to do so. *Green v. Sherrod,* 105 N. C., 197, is exactly in point, as is also *Morris v. McLam,* 104 N. C., 159, and *Frazier v. Frazier,* 129 N. C., 30. If the deed had contained the words suggested, they would have constituted a condition subsequent. Could advantage have been taken of its breach by any one except the grantor, and is there any allegation that she did so? The exception to his Honor's refusal to submit these issues cannot be sustained. The other issues tendered were immaterial. The only questions upon which the decision of the cause depended is whether the words *"and for the further consideration of the support during the natural life of the party of the first part by the party of the second part"* create a condition subsequent, and if so, whether in the light of the pleadings the said Elmira availed herself of the breach, or whether her deed vested in the defendant the power to enter for condition broken. The defendant Haney Helms was introduced by the plaintiff. The defendant upon cross-examination proposed to show by him that the plaintiff never supported, cared for or maintained Elmira in any way whatever, or contributed thereto, after the execution of the deed. That he admitted he did not claim any interest in the land in controversy. That such admissions were made before and after the death of Elmira. That in consequence of such statements he took the deed from the heirs of Gabriel Helms. That W. E. Williams and wife supported Elmira; that the plaintiff never took exclusive possession of said land, but simply went on the same to live with Elmira a short time

after execution of the deed and remained there only six months, and abandoned all claim to the land, etc. To all of this evidence the plaintiff objected, and upon the objection being sustained the defendant excepted. Defendant moved to dismiss the proceeding under the Hinsdale Act, and to his Honor's refusal to allow the motion excepted. Defendant introduced M. L. Flow and proposed to ask him the questions hereinbefore set out, also as to conversation with plaintiff in regard to the land before and since the death of Elmira. All of this proposed evidence was, upon objection, excluded, and defendant excepted. The defendant offered to show by the tax list that plaintiff had not listed the land for taxes. This was excluded. Defendant renewed his motion to dismiss, and to his Honor's refusal excepted. The Court instructed the jury that if they believed the evidence, which was documentary, to answer the issue Yes, and to this the defendant excepted. The defendant assigns a large number of errors; they all involve the same question and must be disposed of upon the same principle. Does the language of the deed operate as a condition subsequent, the breach of which entitles the grantor to avoid the deed and divests the title out of plaintiff, or does it operate as a covenant to furnish support, a breach of which constitutes a charge upon the land? The rule of construction is thus stated: "Conditions subsequent are not favored in the law, and are construed strictly because they tend to destroy estates." Kent's Com. (13 Ed.), star page, 130. "If it be doubtful whether a clause in a deed be a covenant or a condition, the courts will incline against the latter construction; for a covenant is far preferable to the tenant." *Ibid.*, 132.

"A conveyance in consideration of support to be furnished the grantor or another person does not create a condition unless apt words of condition are used, and even then it will

not be held to create a condition unless it is apparent from the whole instrument that a strict condition was intended." Law of Conveyances (Jones), section 646, page 534.

In *Laxton v. Tilly,* 66 N. C., 327, the deed recited that it was made "for and in consideration of $200 and the faithful maintenance of T. L. and wife P. L." *Held,* that the maintenance was a charge upon the land.

In *McNeely v. McNeely,* 82 N. C., 183, the land was devised "To my son Billy at the death of his mother, by him seeing to her." It was held that the words "by him seeing to her" did not operate as a condition to terminate or impair his estate." *Smith, C. J.,* says: "The words are in themselves vague and indefinite, and if an essential and defeating condition of the gift, would be very difficult of application. What is meant by a 'seeing to' the widow, and what neglects fall short of that duty?   *   *   *   And how is the dividing line to be run between such omissions as are and such as are not fatal to the devise?   *   *   *   Titles would be rendered very precarious and uncertain if such matters *in pais* were allowed to defeat a vested estate."

In *Gray v. West,* 93 N. C., 442, 53 Am. Rep., 462, the language was: "That A. G. should have support out of the land." *Held,* that the support was a charge on the rents and profits. In *Misenheimer v. Sifford,* 94 N. C., 592, the devise was to A., "provided he maintain his mother during life comfortably, and shall give her houseroom and firewood during her life or widowhood." *Held* a charge on the rents and profits, and not a condition. In *Outland v. Outland,* 118 N. C., 138, the language was construed a charge on the land. *Wall v. Wall,* 126 N. C., 405.

The language in *Tilley v. King,* 109 N. C., 461, was "And if P. H. T. stays with us until after our deaths, *then* I give this land to him." This was held, *Shepherd, J.,* delivering the opinion, a condition precedent. He says: "The words

used by the testator are words of strict condition." The learned Justice distinguishes the case from those "where a devising clause is followed by or coupled with a proviso that the devisee shall pay to another a specific sum or to support or maintain a certain person," citing *Misenheimer v. Sifford, supra. Erwin v. Erwin,* 115 N. C., 366, which appears to hold otherwise, is overruled in *Allen v. Allen,* 121 N. C., 328, *Montgomery, J.,* saying: "That being in doubt we are disposed to adopt the first view, because the law favors the vesting of estates and leans to the view of a charge rather than a condition precedent."

Looking to other jurisdictions we find the same trend of thought. In *Lindsey v. Lindsey,* 62 Ga., 456, *Jackson, J.,* says: "The consideration of the deed is the continued support of the father by his son, to whom it is made. This is not a condition precedent." In *McCardle v. Kennedy,* 92 Ga., 198, 44 Am. St. Rep., 85, it is said: "The failure to pay the purchase-money, or the failure to maintain and support the grantor, if that be the consideration, is not a sufficient reason for rescinding the contract of sale." In *Pownal v. Taylor,* 10 Leigh, 172 (34 Am. Dec., 725), *Tucker, P.,* says: "There is nothing I think in the proposition that the provision for support and maintenance constituted a condition for the breach of which the grantor might re-enter. It was a charge, not a condition. It was a declaration of a beneficial interest or a trust which might be enforced in equity, but which was perfectly consistent with the existence of the fee in the grantee." Speaking of the right of the grantor to re-enter, he says: "This cannot be unless the grantor had expressly reserved the right to re-enter upon failure of the grantee to fulfill the purposes of the grant." A deed was made "in consideration of natural love and affection," as well as "for the better maintenance and support" of the grantor. It was held that the maintenance,

etc., was the consideration and not a condition subsequent, etc. *Riley v. McNiece,* 71 Ind., 434.

The same view is expressed by the Supreme Court of Illinois, the Judge saying: "There is nothing in the form of the language here employed to indicate that it was intended that the conveyance was upon a condition. The words 'upon condition' do not appear. There is no clause providing that the grantor shall re-enter in any event, and these are the usual indications of an intent to create a condition subsequent." *Gallam v. Herbert,* 117 Ill., 160.

In *Ayer v. Emery,* 14 Allen (96 Mass.), 67, the same principle is announced, *Bigelow, C. J.,* saying: "But it is perfectly well settled that an estate on condition cannot be created by deed. Except when the terms of the grant will admit of no other reasonable interpretation." See also *Stoddard v. Wells,* 120 Mo., 25. While several of the cases cited arose upon the construction of wills, we find no distinction made and no reason for making any between wills and deeds. The difficulties which readily occur in treating provisions of this kind as conditions are numerous. The uncertainty into which titles would be thrown is a strong reason for construing provisions for support as covenants and not conditions is recognized by the courts. To treat them as mere personal covenants, having no security for their performance save the personal liability of the grantor, would often lead to injustice, leaving persons who had made provision for support in old age or sickness without adequate protection or relief. The courts have almost uniformly treated the claim for support and maintenance as a charge upon the land, which will follow it into the hands of purchasers. In this way the substantial rights of both grantor and grantee are preserved. "The grantee by accepting the deed and entering into possession under it becomes bound by the agreement providing for the support of the grantor, and

the provision for support thus becomes equivalent to a life
annuity." Devlin on Deeds, section 807. It is also said
that courts of equity will freely rescind conveyances by
parents to sons upon breach of the agreement to support.
*Buffalow v. Buffalow,* 22 N. C., 241. Jones on Convey-
ances, 646. The last clause in the deed from Elmira to
plaintiff we think shows that the parties understood that
her support was to constitute a charge on the land. It was
in this way that the land was to "stand good for the support
and maintenance" of said Elmira during her natural life.
We therefore conclude that she was during her life entitled
to charge upon the land her support. It may be that in
the light of the conduct of the plaintiff a court of equity
would have declared him a trustee and directed reconvey-
ance of the land, but she sought neither remedy. *Buffalow
v. Buffalow, supra.* The legal title was in the plaintiff, and
could not be divested by a subsequent conveyance to some
other person. "The grantor cannot rescind a deed in con-
sideration of support for his life by exacting a subsequent
conveyance without the consent of the grantee for the rea-
son that the support has been withheld. He must resort to
his action either for the value of the support withheld or to
rescind on equitable grounds." Devlin on Deeds, 975; *Mc-
Cardle v. Kennedy,* 92 Ga., 198.

To the suggestion that the defendant was subrogated to
the right of Elmira to enforce any claim that she had for
her support, it may be said that such claim originated after
the execution of the deed to his grantors. If the defendant
had actually paid out money for her support, which it was
the duty of the plaintiff to have furnished, it may be that
equity would have subrogated him to such claim, to be
enforced as a charge upon the land in some appropriate pro-
ceeding. This question is not presented, because there is
no allegation that the plaintiff supported her. Whatever

rights Williams may have had in this respect did not pass to the plaintiff by his conveyance. The declaration of the plaintiff as to his interest in the land could not operate as an estoppel *in pais*. It was proposed to show that he simply said that he did not claim any interest in the land; his deed was on record and the defendant had notice of it. It would seem that he had actual notice. He took the risk of buying with the facts before him. There is nothing in the conduct of the plaintiff commending his claim to the favor of the Court. His conduct is another illustration of the necessity for carefully safeguarding the rights of persons who convey their land to secure a support in their last days. In the reported cases of this and other States, as well as the experience of most lawyers, is found painful proof of the danger of weak and unusually ignorant persons making such dispositions of their property. Courts of equity will relieve them upon slight evidence of fraud, and courts of law will protect them as best they can by charging the support on the land. It would, however, render titles uncertain and precarious to construe into a condition that which is a matter of consideration or at most a covenant. We have carefully examined the numerous exceptions of the defendant and find no error in his Honor's rulings.

No Error.

CLARK, C. J., dissenting. Elmira Helms being desirous of obtaining a support in her old age in exchange for her land, conveyed it to William Helms "in consideration of one dollar and the further consideration of the support during the natural life of the party of the first part," and then in her poor way she added "and it is further understood and agreed between the parties that the above lands *shall stand good* for the support and maintenance of the said Elmira Helms during her natural life." She was not a learned and

technical lawyer. Had she been, the instrument would have
been worded differently, but it is impossible not to see that
these parties "understood and agreed" upon something dif-
ferent from an absolute and untrammeled conveyance, and
that in fact, the consideration being for the grantor's sup-
port, the grantee was not to have the land absolutely unless
and until such consideration was fully paid. It was agreed
that the *"lands shall stand good* for the support and main-
tenance of said Elmira Helms *during her natural life."*
The parties understood this and expressed it intelligibly,
though not in words of technical art. The plaintiff being
out of possession cannot recover, certainly not in a court
combining equity with law, without showing a compliance
with his contract. *Drisbach v. Serfass* (Pa.), 3 L. R. A.,
836; *Williams v. Bentley,* 27 Pa., 294. In fact, the Court
would adjudge upon the evidence that by the abandonment
of the performance of his part of the contract by the plain-
tiff the instrument became null and void. *Hawkins v. Pep-
per,* 117 N. C., 407. Upon the face of the agreement, if
there was no support whatever, there was to be no convey-
ance in exchange. The contract was in the nature of a con-
veyance, reserving the vendor's lien till the purchase-money
was paid, whereupon only the title should become absolute.
Till then it "stood good" was retained to secure such pay-
ment. In many States the vendor's lien exists till the pur-
chase-money is paid, though there be no reservation in the
deed, and such was formerly the law in this State. *Wynne
v. Alston,* 16 N. C., 163, later overruled by *Womble v. Battle,*
38 N. C., 182, upon the sole ground that our registration
law was intended to destroy all secret liens or reservations
not upon the face of the deed. The reasoning does not apply
here, where the condition is expressed, nor to the grantee
in the instrument, for, as to him, the agreement is binding
with or without registration. There is no reason the parties

cannot, and in such cases as this there is every reason why they should, retain title till the consideration is paid. Such provision showing the manifest intent of the parties should be construed according to the actual understanding and agreement of the parties and upheld in this court of equity, however it might have been in a court of law. It is not technical language that we should seek, but to effectuate the true agreement and understanding of the parties.

In fact, the grantee never took possession of the land at all, nor listed it at any time for taxation, nor paid any part of the consideration; he admitted such facts both before and since Elmira's death, and, in consequence of such default and abandonment of the contract, Elmira executed another deed to Gabriel Helms, under whom the defendant Haney Helms claims, to secure her support, which she thus obtained. The defendants offered this evidence, and in view of the contract that the "lands *shall stand good* for the support of Elmira Helms during her natural life," the evidence should have been admitted. It matters little whether these words constituted an inartificially expressed mortgage, or a retention of the vendor's lien, or a defeasance upon failure of consideration. The important consideration is to effectuate the true and manifest agreement of the parties, which requires that the plaintiff, who has paid nothing whatever for the land, shall not recover it in spite of his agreement that the land "shall stand good" for the purchase-money, against those who paid the stipulated consideration after the plaintiff had abandoned and wholly failed to execute the contract. The evidence offered and excluded went to show that proper technical words to make this instrument a conveyance on condition, or a mortgage, were omitted by "ignorance or mistake," grounds held sufficient in *Green v. Sherrod,* 105 N. C., 197; *Norris v. McLam,* 104 N. C., 159; *Frazier v. Frazier,* 129 N. C., 30. Indeed when, as was

offered to be shown here, it was agreed between the parties at the time the deed was delivered that it should operate as a mortgage, as against the original grantee, the Court will so decree, though the defeasance clause was not omitted through ignorance, mistake, fraud or undue advantage. *Waters v. Crabtree,* 105 N. C., 394; *Watkins v. Williams,* 123 N. C., 170; *Porter v. White,* 128 N. C., 42; *Fuller v. Jenkins,* 130 N. C., 554.

In *Laxton v. Tilley,* 66 N. C., 327, the words "In consideration of $200 and the faithful maintenance of T. L. and wife" were held a charge upon the land, and there are several cases of like purport. But here the clause is added, "stands good for the support of" the grantor during her natural life, which is stronger, and, taken in connection with the evidence offered that the grantee never accepted or acted upon such contract, but immediately abandoned and altogether failed to act upon the contract, the Judge should not have instructed the jury to return a verdict for the plaintiff, but he should have left it for them, in view of the ignorance of the grantor and the evidence of language cotemporaneous with the execution of the deed, to say whether the intention was to make a conveyance subject to the grantor's lien. If so, the purchase-money not having been paid, the title remained vested in the grantor and passed by her subsequent conveyance to the grantor of the defendant. There was an allegation in the complaint that technical words to express the "condition precedent" were omitted by ignorance or inadvertence. It was error to refuse to submit such issue and evidence to prove it. *Davidson v. Gifford,* 100 N. C., 18.

This was a conveyance upon condition "the land was to stand good," remain the property of the grantor until and unless its owner, Elmira, was "supported during her natural life" by William Helms. Not having complied with this condition, and not having paid a dollar to the support of

Elmira, but having stood by while others were supporting her under a similar contract made after his abandonment of this agreement, William Helms should now recover the land from those who did support Elmira. It would be unconscionable. Being in possession, Elmira could not re-enter for condition broken. *Frost v. Butler,* 22 Am. Dec., 199. It is not conceivable that Elmira contracted that if William Helms did not support her, and should refuse to execute the contract altogether, that she reserved the privilege to bring suit and have him declared a trustee and ordered to reconvey. She had neither the knowledge nor the means to do this, and where would she have gotten a support during the years of such litigation? Her contract, both written and verbal, was dictated by common sense—"the land was to stand good" for her support, and if William Helms did not give the support the land was good, it was to remain hers till the support was completed. No other construction can reasonably and justly be placed upon this agreement of the parties; construed otherwise, it is a nullity.