A. H. HURWITZ AND B. HURWITZ v. CAROLINA SAND AND GRAVEL COMPANY.

(Filed 28 April, 1926.)

**1. Mines and Minerals—Contracts—Leases—Implied Covenants.**

For the terms of a written contract with a reverter clause, for the mining of sand and gravel at a certain price per ton, payment to be made every six months, or deposited in a bank to the owner's credit, there is an implied covenant that the grantee will work the mine as such mines are ordinarily worked.

**2. Same—Abandonment.**

The absolute failure of the grantee of mining interests in land to work the mines under an implied covenant to do so, will be regarded as an abandonment of his right.

**3. Same—Equity—Suits—Cloud on Title.**

Where the grantee of mining interests in lands has abandoned his right to work them under the terms of the contract or conveyance, the grantor may maintain his suit to declare the conveyance forfeited, and to remove it as a cloud upon his title.

**4. Pleadings—Demurrer.**

Upon demurrer to the complaint, every material allegation thereof, and reasonable inference therefrom tending to establish the plaintiff's cause of action, will be taken as true.

**5. Same—Mines and Minerals—Breach of Covenant.**

Where the plaintiff alleges in his complaint a breach of defendant's implied covenant to mine the *locus in quo*, and that thereby, by his continued possession he has deprived the plaintiff of the value of his property rights therein, a demurrer is bad and should be overruled.

Appeal by plaintiffs from *Dunn, J.,* at December Term, 1925, of Moore. Reversed.

This is an action brought to remove cloud from title to land by cancelling certain deeds from plaintiffs to John A. Royall and from said Royall to defendant, for nonuser and forfeiture in not complying with the terms of a mining contract. The complaint of plaintiff alleges that a contract to lease the sand, gravel and stone on certain land of plaintiffs was made with John A. Royall, the predecessor in title of the present defendants. Under the contract a certain amount was paid for five years and the other material provisions in the mining contract are: "And after the expiration of five years the said grantee, for himself, his heirs, administrators, executors and successors and assigns, agree to pay to said grantors and their heirs, administrators, executors, successors and assigns, a royalty of one cent per ton for all gravel, stone and sand removed from said two tracts of land; and it is understood and agreed that if the grantee, his heirs, successors, administrators, executors and assigns shall default in the payment of the sums of money and royalties hereinbefore mentioned for the period of six months from the time they become due, then that all the rights and privileges, title and interest herein conveyed shall revert to the grantors, their heirs, administrators, executors, successors and assigns, and thereupon the grantors, their heirs, administrators, executors, successors and assigns, and the grantee, his heirs, administrators, executors, successors and assigns shall be relieved from all obligations hereunder, except that under no circumstances shall the grantee, his heirs, administrators, executors, successors and assigns be relieved from paying at least $600 per year, as above specified, during a period of five years, to the said grantors, their heirs, administrators, executors, successors and assigns. It is further agreed that when at any time before the expiration of five years from 15 June, 1919, as much as $2,000 royalties have been paid, exclusive of the $1,000 already paid, then and in that event the guarantee of $600 per year above provided shall cease, and from then on the grantee, his heirs and assigns, shall pay the grantors, their heirs and assigns, quarterly, one cent per ton for all gravel, sand and stone removed as aforesaid. All obligations herein assumed or imposed upon the grantee shall be imposed upon his successors, heirs and assigns, but shall in no case relieve the said grantee of his personal responsibility to the grantors, their heirs, administrators, executors, successors and assigns. And it is further understood and agreed that the grantee, his heirs, administrators, successors and assigns, may deposit with Page Trust Company, for the benefit of the grantors, their heirs, administrators and assigns, the several sums of money or royalties hereinbefore provided for, and at the times hereinbefore specified in lieu of paying same to grantors, their

heirs and assigns. To have and to hold the said gravel, sand and stone and the said rights and privileges hereinbefore described, unto the said grantee, his heirs, successors, administrators and assigns, and the said grantee, for himself, his heirs, successors and assigns, hereby agrees to keep a true and strict account of all gravel, sand and stone removed from said two tracts of land, and to furnish to the said grantors and their heirs, administrators and assigns, an itemized statement of the same quarterly from 15 June, 1919, and the said grantee, for himself, his heirs, administrators, successors and assigns guarantees and agrees to pay the said grantors, their heirs, administrators and assigns the said sum of money and royalties above set forth."

The complaint alleges, in part:

"That since 15 June, 1924, the defendant has made no payment whatever of any rent, although same was due and owing to these plaintiffs, and that by reason thereof the defendant has forfeited all its right, title and interest in and to said contract, as provided by the terms thereof.

"That the contract between the plaintiff and John A. Royall under date of 15 June, 1919, recorded in Deed Book No. 74, page 77, and the conveyances from John A. Royall to the defendant herein, as recorded in Deed Book 76, page 215, constitute a cloud upon the title of the real estate of these plaintiffs which they are entitled to have canceled of record, as they are advised, informed and believe and so allege.

"That by reason of the default of the defendant in the payment of its rent, as provided by the terms of the contract and agreement and the conveyances of record as above set out, these plaintiffs are deprived of the use and enjoyment of their valuable sand, stone and gravel on the said described land by the nonuse thereof and default of the defendant."

The demurrer is as follows:

"1. The complaint does not state facts sufficient to constitute a cause of action in that—

"(a) It is not alleged that there was any default in the payment of royalties for five years after 15 June, 1919, specified in the deed, copy of which is attached to the complaint;

"(b) Under the terms of said deed and the allegations of the complaint the defendant is chargeable with one cent per ton for all gravel, stone and sand removed from said two tracts of land, and it is nowhere alleged that any gravel, stone or sand, after 15 June, 1919, has been removed from said land;

"(c) It is nowhere alleged in the complaint that any royalty in any specified amount was due or owing on any payment day mentioned in said deed to the plaintiffs or either of them by the defendant."

The demurrer was sustained and plaintiffs excepted, assigned error and appealed to the Supreme Court. The other material facts will be set forth in the opinion.

*W. R. Clegg for plaintiffs.*
*H. F. Seawell for defendants.*

CLARKSON, J. The present action was commenced on 3 December, 1925. There was an action for injunction heretofore between the same parties. 189 N. C., 1.

A demurrer admits the allegations of the complaint and all reasonable inferences to be drawn therefrom under a liberal construction of its terms, which must be upheld unless wholly insufficient. The pertinent parts of the mining contract to the controversy must be considered. From a careful examination of the contract, after 15 June, 1924, the five-year period having expired, it was clearly the intention of the parties that the mining for gravel, sand and stone should continue as heretofore, one cent per ton paid for all gravel, sand and stone removed from the land payable quarterly, and any default in the payment for six months, the title and interest in the mining contract shall revert to plaintiffs and their legal representatives. The contract further provided that the grantee should keep a true and strict account of all gravel, sand and stone removed from the land and furnish an itemized statement quarterly from 15 June, 1919, to plaintiffs. This action is brought over a year after the first quarterly period of default.

In *Conrad v. Morehead,* 89 N. C., p. 35, *Merrimon, J.,* construing a similar mining contract, said: "In the case before us the lessee covenanted expressly to pay the lessor 'One-tenth part of all the gold, silver and other metals that may be procured from said land, and to account for the same quarterly, if so required.' There is no express covenant that the lessee shall work the mine continuously, or in any particular way, or at all; but there is manifestly an implied covenant on the part of the lessee that he will work it as such mines are usually worked, and with ordinary diligence, under the surrounding circumstances; not, indeed, simply for his own advantage and profit, but as well to the end the lessor may have his toll 'quarterly, if he shall so require,' or at such longer intervals as he may see fit to prescribe. Taylor, L. & T., secs. 252, 253, 421; *Rosley v. Walker,* 5 Term Rep., 373; 4 Wait, Ac. & Def., 203, 246; Arch., 68. Such covenant arises by necessary implication. It would be unjust and unreasonable, and contravene the nature and spirit of the lease to allow the lessee to continue to hold his term a considerable length of time, without making any effort at all to mine for gold and other metals. Such a construction of the rights of the

parties would enable him to prevent the lessor from getting his tolls under the express covenant to pay the same, and deprive him of all opportunity to work the mine himself, or permit others to do so. The law does not tolerate such practical absurdity, nor will it permit the possibility of such injustice. . . . (p. 36.) It is of the essence of the contract, necessarily implied, that the lessee should work the mine with reasonable diligence, or surrender the lease, as he had the right to do by express stipulation, so that the lessor might, in the first alternative get the tolls; or, in the other, work the mine himself, or sell, or let it to some other person, in his discretion. This construction is reasonable and just, and in the absence of any express stipulation in respect to working the mine, the law implies that this was the contract between the lessor and lessee." *Maxwell v. Todd,* 112 N. C., 687; *Hawkins v. Pepper,* 117 N. C., 407.

In the mining contract there is a reverter clause in favor of plaintiffs. This is enforceable by plaintiffs. *Sharpe v. R. R.,* 190 N. C., p. 350.

The defendants now have possession of the land under the mining contract for the purpose of mining for gravel, sand and stone. The plaintiffs are entitled to a royalty since 15 June, 1924, of one cent a ton for all that is mined since the expiration of the five-year period. This mining contract is valuable to plaintiffs as well as to defendant. Under a contract, as in the present case, for a particular mining industry to be carried on, the defendant cannot keep the land and refuse to go on with the operation. Such a course would destroy plaintiffs' royalty and render their land valueless. Defendant will not mine, and plaintiffs are not allowed to do so. It would be the old fable of the "dog in the manger." For such a contingency we think the contract makes provision. Under the five-year lease contract, the payments are to be made quarterly. It is provided in the latter part of the lease contract, in reference to the one cent per ton to be paid after the five-year period, "the several sums of money or royalties hereinbefore provided for and at the times hereinbefore specified in lieu of paying same to grantors," the fund may be deposited with the Page Trust Company, for the benefit of plaintiffs. The lease contract by fair implication provided that the mine must be operated and quarterly royalty is to be paid, and true and strict account kept of all gravel, sand and stone removed from the land and an itemized statement furnished plaintiffs quarterly. It is true the contract provides that this shall not be paid until removed from the land. But, when defendant refuses to carry on its mining operations according to contract with reasonable diligence, and does not mine so it can sell and pay the royalty, it waives its right by omission, abandonment and neglect, and the plaintiffs can, after

waiting six months after these quarterly periods, as it has done in this case according to the contract, bring an action under the mining contract for reverter, especially provided by the contract, and to remove the cloud on the title to the land. Any other construction, from the entire contract would work a grave injustice to plaintiffs never contemplated by the parties and be inequitable and unconscionable. The position here taken is fully borne out by the authorities in this State and elsewhere.

The question arises, does the plaintiffs' complaint, by reasonable inference, allege facts sufficient to come within this position here taken? We think so.

It is alleged, among other things, that the defendants by nonuse and default have deprived plaintiffs of the use and enjoyment of their land. We think this allegation makes out a cause of action. It is a statement of a good cause of action, from the view we take of the mining contract. If the statement of a good cause of action is too general, a bill of particulars or a motion more definite is allowed under our statutes. C. S., 534-537; *Power Co. v. Elizabeth City,* 188 N. C., 285.

In *Hawkins v. Pepper, supra, Avery, J.,* speaking to the question, says: "It is a well settled principle that where an estate or interest in land is conveyed for a nominal consideration subsequent which constitutes the consideration on the part of the grantor for executing the deed conveying it, a reasonable time will be allowed for its performance, after which the courts will adjudge that the grantee, if he has taken no steps looking to and giving promise of a compliance with it, has abandoned the purpose to perform it. *Ross v. Tremaine,* 2 Met. (Mass.), 495; *Allen v. Howe,* 105 Mass., 241; 6 A. & E. Enc., p. 903, note 1; 2 Washburn (5 ed.), p. 12, star pp. 449-450; *Austin v. Cambridgeport Parish,* 21 Pick. (Mass.), 215."

In 1 Tiffany on Real Property (2 ed.), sec. 254, p. 870, it is said: "By some decisions, if the rent is, by the terms of the lease, entirely dependent on the extraction of ore, a covenant on the part of the lessee is to be implied that he will work the claim or mine with reasonable diligence, and occasionally it has been decided that, although there is no express provision to that effect, the lessor may assert a forfeiture for failure to work. It would, however, be more in accord with principle to base the rights of the lessor in such case, as to resumption of possession, upon the theory that the failure to work involves an offer to relinquish possession which the lessor may accept, thereby effecting a surrender by operation of law, or upon the theory that a promise to work the mine is to be implied, and that upon the lessee's repudiation of that promise the other party may rescind and recover the consideration for the promise, that is, the possession of the land."

It is well settled that certain apt words will be held to create a condition subsequent and work a forfeiture. *Hall v. Quinn,* 190 N. C.; 326; *Shields v. Harris, ibid.,* 520; *Cook v. Sink, ibid.,* 629. The contract in the present case has an express reverter clause.

For the reasons given the demurrer is overruled and the judgment of the court below

Reversed.