GastoN, J.
 

 The original bill in this case was filed by David Edwards, as complainant, against Gard Thompson the defendant: and it prayed for relief against a conveyance, and to have it set aside, as having been obtained by the defendant from the complainant by surprise, imposition aud fraud. David Edwards died, and John A. Green was permitted to revive the suit and to prosecute the same as party ■plaintiff Upon the pleadings and proofs the fact appear to be these :
 

 The testator of the plaintiff was, at the time of the transaction complained of, about seventy-five years of age. He
 
 *366
 
 was illiterate, and a man of feeble judgment but of nnnsually vigorous constitution, and competent to and even shrewd in the management of his ordinary affairs: He had always addicted to drinking, and, when drunk, was liable to be imposed upon by flattery or by playing upon his passions and prejudices. He was a man of petulant disposition, violent temper and offensive manners, and lived alone, having driven off his wife by such cruel treatment as induced her to obtain a divorce from his bed and board, and caused his only son to leave him, against whom he cherished a strong resentment. He had grand-children, the children of a deceased son who lived’ remote from him, and with them it does not appear whether he did or did not maintain any intercourse. The defendant had married his niece, and for her he was accustomed to express sentiments of regard, and with her he had for some time expressed a desire to reside. On the 7th of March, 1838, he and the defendant jointly executed an instrument under seal, purporting to be an indenture, whereby, in consideration of the sum of one dollar acknowledged to have been received from the defendant, and of the covenants therein contained, and of divers other good causes him the said Edwards thereunto moving, he gave, bargained and sold unto the defendant and his assigns forever ten negroes by name, two of whom were women and the others their children, five head of cattle and twenty-seven head of hogs; and whereby the defendant covenanted, at the defendants’s own cost and charges and at the defendant’s house, to maintain and keep the said Edwards with good and sufficient food, raiment and lodging during his life, and to furnish him with horse, sulkey and boy to wait on him ; end whereby it was also declared, that, if the said Edwards should prefer to reside with some other person, then he was to have the privilege to take the said negroes, cattle and hogs to keep during his life, all of which, at his death, were to return to the said defendant and his assigns. The property, so conveyed, was worth about $3,500, consituting rather more than half of what he was worth; but it yielded little or no immediate profit, as the expense of maintaining the negroes was equivalent to the value of their services.—
 
 *367
 
 He retained a tract of land valued at $850, a negro man and negro woman worth together $900, about $340 in cash, good notes to the amount at least oí $190, two horses and a sul-hey. The instrument was prepared under his immediate instructions, after having been modified several limes by his friends (who appear to have been entirely disinterested and to have possessed and deserved his confidence) in such a way as to make it consistent with his declared wishes. Care was taken to explain the meaning and operation of it to him before it was executed, and it was executed by him deliberately, while perfectly sober and in the full possession of his understanding, and, as far as appears, without the solicitation or urgency or unfair practices of any kind on the part of the defendant or any other person. After the execution of the instrument, he resided a few months at the defendant’s house, where he was decently maintained and kindly treated: but in the course of the summer of 1S38, he became dissatisfied, quarrelled with the family, and refused to stay any longer there. The cause of quarrel need not be particularly stated. It was one disgraceful to him, and reflecting no blame on any member of the family. After the quarrel, he demanded his negroes, but having avowed his determination, as soon as they should be received to-run them off to Alabama, the defendant refused to surrender them. In September. 1838, he fihd this bill, to which the defendant put in his answer, wherein he stated all the facts of the case with much candor, and, as far as the evidence taken enables us to judge, with great truth, and, professing a readiness either to maintain the complainant at the defendant’s house -in the manner stipulated in the indenture, or to surrender the property to the complainant, if any adequate security could be given that the same would not be made way with, insisted that the contract, as evidenced by the indenture, was iairly, freely and deliberately entered into, and claimed to have the full benefit thereof.
 

 A contract like that, which is here sought to.be rescinded, ought to be examined with great care. It is difficult to conceive of a situation, in whreh one, entrusted with the management of property, could be more exposed to the artifices
 
 *368
 
 of imposition, especially in a contract for the disposition of that property after death, than the condition in which we find the testator of the plaintiff, at the time when this instrnment was executed. Of advanced years, weak intellect, capricious temper, violent passions and vicious habits — deserted and justly deserted by his wife and only child, and in return hating with bitter hatred those who ought to have been the objects of his affection, and the stay and solace of his old age — driven oil by his offensive manners from an association with the good and decent part of his fellow men — this cheerless, solitary being was well fitted to become the prey of flatterers, parasites, cheats and false friends. We should be inattentive to the plainest and highest obligations of justice, if we did not extend to him all the protection which his hopeless state required, and did not watch over every transfer of property obtained from him with suspicious vigilance. And if we could see in the case under consideration, that any arts or stratagems had been used to lead him into the arrangement complained of, or that it was probably effected under the influence of a misplaced confidence, or that it was made in haste and without full knowledge of its nature and consequences, or without an opportunity of free consulta'ion with those competent to advise him, and honeitto give him faithful counsel — if we could declare it to have been obtained by what the .law pronounces fraud — we should cheerfully interpose to give the relief asked. But we must not forget that the right to dispose of property at the will of the owner belongs to every man, whom the law acknowledges to be
 
 sui juris ;
 
 that the courts of justice must not arrogate to themselves the power to annul dispositions, because they are improvident, or are such as a wise man would not have made, or a man of nice honor have consented to receive ; and that all his bargains, nay, even his gratuitous acts, it formally executed and no power of revocation reserved, are binding, unless they can be avoided because of surprize, or mistake, want of freedom, undue influence, the suggestion of a falsehood or the suppression of truth.
 
 Villers
 
 v
 
 Beaumont,
 
 1 Ves. 100.
 
 Huguenin
 
 v
 
 Basell,
 
 14 Ves. 273.
 
 Pratt v Barker,
 
 1 Sim. 1.
 

 
 *369
 
 The evidence is complete that here was no surprise, mis take or want of freedom, and that the instrument was fram ed in accordance with the-deliberately formed and- well understood purposes of the plaintiff’s testator. There is no evidence of undue influence or deceit — unless such evidence be furnished, as the plaintiff’s counsel insists it is furnished,by the very nature of the contract. Certainly there may be bargains so manifestly unequal and unfair, as-to furnish of-themselves proof of imposition. Of this kind? are sales,where the inadequacy of- price' is so enormous as to shock the- conscience. The plaintiff’s counsel has endeavored to-bring this doctrine to bear upon the case before us. He
 
 has
 
 urged that the sole consideration for the transfer of property to the value of $3,500, was the charge of maintaining this old man during the few- and evil days that yet remained-to him, and that this charge was out of all proportion to the value of the property transferred. But in the first place it is manifest, that this was not the sole consideration of the conveyance. The deed declares there were other considerations. and none can doubt but that affection for his niece constituted one of them, and a conveyance of property to the husband was a naturaL and ordinary mode of shewing affection for his wife. But, in the next place, it is difficult, if not impracticable, to institute a comparison between the charge, as the defendant had- engaged to- execute it, and the value of the property transferred. The charge was, that he should be maintained at
 
 the defendant's own house¡and
 
 some of the most respectable witnesses examined in the case have testified, that
 
 all
 
 the old man’s property would not by them be deemed a sufficient remuneration
 
 for a maintenance so afforded.
 

 In the course of the argument much stress has been laid by the plaintiff’s counsel on the circumstance, that the instrument makes a very insufficient provision for the maintenance of the old man, if he should choose to remove from the defendant’s house. In that event it merely provides for the restitution to him, during; the remainder of his life, of the property conveyed, and
 
 this,
 
 inasmuch as the property
 
 *370
 
 was not immediately productive, would be rather an incum-than a benefit. There is no part, of the conveyance, which may be so emphatically pronounced to be the unbi-assed and original suggestion of Edwards himself, as this which has been made the subject of special exception. It was introduced into the instrument at his dictation by Mr. Washington, whom he consulted specially for that purpose, in lieu of a provision contained in a former deed, which had been drawn up by the present plaintiff, whereby an annuity was stipulated to be paid to him, in case he should prefer to remove from the defendant’s house. It may be that the provision preferred by him was not a wise one, but it may also be, that he had reasons for preferring it, which do not immediately strike us. Though old, he was of remarkably robust constitution and of vigorous health. He may have contemplated many years of life as probable, before the expiration of which several of the yonng negroes, that were to be feared at the defendant’s costs, would become immediately profitable, and he might prefer, should such a state of things óccur, to have it in his power to receive these profits, rather than take the maintenance stipulated for in the deed. At all events, we see nothing in the provision so palpably absurd, as to force us to the conclusion that the agreement containing it was that of a deceived man.
 

 We are of opinion that the bill must be dismissed with costs.
 

 Per Curiam. Bill dismissed with costs.