Battle, J.
 

 There are certain relations of social life, in which the persons stand in such confidential and fiduciary positions towards each other, that the Court of Equity views
 
 *41
 
 with a suspicions eye every dealing between them in respect to property. The intimacy existing between such persons is so great, and the means of exercising undue influence by one over the other, is so constant and so subtle, that the Court, upon the principle of general public policy, will set aside a voluntary donation obtained, by what may be called, without disparagement, the superior over the inferior, during the existence of tlie relation. The relations to which this principle has been most usually applied, are those of parent and child, guardian and ward, trustee and
 
 cestui que trust,
 
 and attorney and client; but it is not confined to these, and will be extended to all the variety of relations in which dominion may be exercised by one person over another. Thus, in the celebrated case of
 
 Huguenin
 
 v.
 
 Basely,
 
 14 Ves. Jun. Rep. 273, it was applied by Lord Chancellor Eldon to a voluntary settlement obtained by a clergyman from a widow whose affairs he had undertaken to manage. So, in
 
 Dent
 
 v.
 
 Burnett,
 
 4 Myl. and Cr. 269, a gift obtained by a medical attendant from his patient, was set aside by Lord Chancellor Cottenixam ; and in
 
 Harvey
 
 v.
 
 Mount,
 
 8 Beav. Rep. 437, a voluntary settlement by a younger sister of the whole of her present and future property, principally in favor of her elder sister, was annulled upon the ground that the latter had obtained great influence and ascendancy over her, and had been allowed to assume the management of all her affairs. So, in
 
 Buffalow
 
 v.
 
 Buffalow,
 
 decided in this State, 2 Dev. and Bat. Eq. Rep., 241, a conve_yance of all his estate, upon an inadequate consideration, by an aged and weak-minded uncle, to his nephew, whom he had called in to counsel and assist him in a suit before a single magistrate, was set aside upon the same general principle.
 

 In all the instances to which we have referred, the court did not proceed upon the ground of fraud, for that would have furnished a distinct and substantial claim to relief, but it acted upon a bi’oad principle of public policy, the application of which was deemed necessary to secure the weak and confiding from the artifices of those in whom they are compelled,
 
 *42
 
 from the very nature of the relation between them, in a great degree, to trust. But in the application, the court has always disavowed the assumption of a power to prevent the owner of property from disposing of it, either with or without consideration, in any way that interest, fancy, or even caprice, might dictate. 'Whenever, then, there is a legal power of disposition, and the intimate relations to which we have referred, do not exist between the grantor and the grantee, or donor and donee, the grant, or gift, will be sustained, unless fraud or undue influence be alleged and proved. Thus, in
 
 Hunter
 
 v. Atkins, 3 Myl. and Keene’s Rep.
 
 113,
 
 Lord Brougham supported a gift by deed, subject to a power of appointment by the donor, Admiral Hunter, then upwards of ninety years of age, to Aider-man Atkins, his confidential agent, who had, for many years, been in habits of friendship with him, although made without the intervention of a third person, the solicitor who drew the deed being the solicitor of the Alderman who took benefit under it; his Lordship being of opinion that the facts of the case did not warrant the Court ascribing the deed in question to an undue influence, or influence improperly exerted over a person cither of insufficient understanding, or under the control or management of another. In the course of his able and and elaborate argument, he thus drew the distinction between the principle established by
 
 Huguenin
 
 v.
 
 Basely,
 
 and the one upon which he was then giving judgment. “ The rule cannot be much more precisely stated than this — -that where the known and defined relations of attorney and client, guardian and ward, trustee and
 
 cestui que trust
 
 exist, the conduct of the party benefitted must be such as to sever the connection, and to place him in the same circumstances in which a mere stranger would have stood, giving him no advantage, save only whatever kindness or favor may have arisen out of the connection, and that when the only relation between the parties is that of friendly habits, or habitual reliance and advice, and assistance, accompanied with partial employment in doing some sort of business, care must be taken that no undue advantage shall be made of the influence thus acquired. The
 
 *43
 
 limits of natural, and often unavoidable kindness, with its effects, and of undue influence exercised, or unfair advantage taken, cannot be more rigorously defined.” To the same effect is the case of
 
 Taylor v. Taylor,
 
 6 Ire. Eq. Rep.
 
 26,
 
 decided in this State; where a deed of gift from an old lady, aged about ninet3, to her grandson, for all her personal estate, thereby leaving a daughter and several grand-children unprovided for, was upheld, because there did not appear to have been any fraud, circumvention, or undue influence exercised in obtaining it, though it was clearly proved that the donor was very feeble, both in body in mind, and in a condition to be easily imposed upon.
 

 It is upon the principles which we find to be thus established that the case now before us, must be determined. The plaintiff does not, herself, put her claim to relief among those cases of intimate and confidential relations in which the Court will set aside a voluntary conveyance upon the ground of general public policy, but she seeks to have her deeds to the defendant cancelled, upon the less stringent principle of undue influence actually exercised, and unfair advantage actually taken. She does not, by her bill, allege that the defendant, John Munroe, had ever been entrusted by her with, or had ever assumed the
 
 general management
 
 of, her affairs, or even that he was her confidential adviser. The only allegation is that he became her son-in-law by marrying her youngest daughter, and “ being a shrewd, artful and designing man, and of considerable business habits, he became very attentive to her, and his little acts of kindness to her were frequent, without solicitation, and even remarkable, showing himself thereby apparently, the most loving, kind-hearted and devoted son-in-law,” and she charges that he thereby won her entire confidence, as it was his purpose to do, and then abused it by obtaining from her, by the means of undue influence improperly exercised, the two deeds which she prays to have cancelled. Here, then, is a distinct charge of undue influence exercised for a fraudulent purpose, and resulting in the obtaining from the plaintiff, who is represented to have been an ignorant old
 
 *44
 
 woman of seventy years of age, conveyances of all her property, upon the sole consideration that the donor was to have the use of it during her life, and that the defendant had covenanted to support her out of his own means, if the proceeds of her own property should not be sufficient for that purpose. All the charges of fraudulent intent and unfair practices, are directly and positively denied; and in the answer the defendant asserts that the conveyances were the voluntary and unsolicited acts of the plaintiff; that she fully understood their nature and effects, and was at the time entirely competent to make them. The parties are thus at issue upon the material facts which are alleged as the foundation of the relief sought, and the result of the cause must depend upon the proofs.— These, we have examined with care, and without stating them in detail, we will proceed to announce briefly the conclusion to which we have come in relation to them. The first deed was executed on 22d day of March, 1815, and purported to convey to the wife of the defendant, John Munroe, two female slaves, Breasy and Zilpha, one, four, and the other, two years of ago, reserving a life-estate in them to the donor. The consideration recited, is love and affection for the donee, and also the sum of two dollars paid, and at the close of the instrument is a personal covenant from John Munroe, that if the donor, and her sister Sarah Smith,
 
 “
 
 should ever become a charge,” he would support them. There is no testimony to show that this deed was unfairly obtained. The allegation in the bill, that the defendant desired it to be kept secret, is unsupported by proof. On the contrary, it appears from the entries on the deed itself, that it was within less than two months after its execution, carried and proved in open court, by the subscribing witness, and vjas registered upon an order to that effect, in the usual manner. The subscribing witness is, unfortunately, dead, and we have no testimony to explain the circumstances attending the execution of the instrument; but we are informed by the proof that the witness wras a respectable man, and one in whom both parties had confidence. The other deed was executed on the 21st of December, 1852.,
 
 *45
 
 in the presence of two attesting witnesses. It recites that the donor “ being conscious of approaching age and infirmities, and wishing, so far as may be, to secure herself against their effects, do make this covenant and agreement, for the purpose of securing to herself a maintenance during her life.” It then proceeds to convey to John Munroe, in consideration of ten dollars paid to her, “ all and every article, or species of property, or effects, that she owns, or may own at the time of her death, with the exception of one bed and furniture, and one half of her wearing clothes.” The possession of the property was to remain with her during life, and the donee covenanted that he would so manage it, as to make her a comfortable support during life, s< or otherwise furnish the same out of his own property.” The principle articles thus conveyed, were-a mare, a small stock of cattle and hogs, some plain household and kitchen furniture, and some provisions on hand, besides some notes for money, amounting to three or four hundred dollars. This instrument appears from the testimony of the two subscribing witnesses, to have been fairly obtained, and the donor knew and understood its contents, and that though she, herself, requested it to be kept secret from her other children, it was soon after its execution proved in open court by both the subscribing witnesses, and was duly registered. It appears abundantly from all the proofs, that the defendant John Munroe, after marrying the plaintiff’s daughter, was very kind to her, attended to her many little acts of business for her, and never relaxed his attentions, or his kindness, until there was a falling out between them, about a year after the execution of the last instrument. What was the cause of the quarrel between the parties, does not appear. The plaintiff complained to some of the witnesses, that the defendant did not supply her with proper food and other necessaries, but it was proved by one of her own witnesses, (Neil Morrison) that “ she was sometimes hard to please, and overbearing, and that when she got out of humor, it seemed hard for Mr. Munroe to satisfy her.”
 

 The testimony of every witness, who spoke upon that sub
 
 *46
 
 ject, shows that she, though illiterate, and incapable of understanding the technical language of a written instrument, unless explained to her, was a woman of good mental capacity for a person of her age, and that she was entirely competent to transact any ordinary business.
 

 Taking, then, all the proofs together, and giving them a fair consideration, we are constrained to say that they have failed to satisfy us that the deeds in question were obtained, either by fraud, circumvention, or the exercise of undue influence, and we cannot, therefore, make a decree for setting them aside.
 

 In the event of her failing to obtain this primary relief, the plaintiff’s counsel has asked for a decree, under the general prayer, that a suitable allowance may be directed to be paid to her, and that an inquiry be ordered to ascertain the proper amount. We at first thought that this might be done, but it appears from the pleadings and proofs, that the defendant has always been willing, and is so still, to support and maintain the plaintiff according to his covenant, and we do not feel at liberty to vary his contract, or the stipulated mode of its fulfilment, in the absence of any sufficient proof of a default on his part. If there has been, in fact, any breach of his covenant, the plaintiff has a clear remedy therefor, at law.
 

 The bill must be dismissed, but without costs.
 

 Per Curiam, Decree accordingly.