### MacFARLAND v. HANES et al.

(District Court, E. D. North Carolina. March 9, 1923.)

No. 421.

1. **Evidence ⬅18—Judicial notice taken of inflated land values.**

The court may take notice of the fact as a part of recent history that during the early months of the summer of 1920 real estate in a certain section was selling at unprecedented high prices, and that a slump came in prices in the latter part of that year.

2. **Contracts ⬅83—Mere failure of consideration no ground for cancellation of executed contract.**

Mere failure of consideration, in the absence of fraud, misrepresentation, or concealment of essential facts, is not sufficient on which to base an appeal to a court of equity to rescind and cancel an executed contract.

3. **Exchange of property ⬅8(1)—Conveyance not canceled for failure of consideration.**

One exchanging for land forming a part of a larger tract covered by a mortgage, with full knowledge of the facts, is not entitled to cancellation on the ground of failure of consideration because his vendor failed to pay off the mortgage on the whole propertly, and it was lost on foreclosure, there being no fraud, misrepresentation, or concealment of fact, but must resort to his remedy at law upon the promise of the vendor to raise the mortgage or upon his covenant of warranty.

In Equity. Bill by Grenville S. MacFarland against F. W. Hanes and others for rescission of contract, cancellation of deeds, and general relief. Decree ordered.

Manning & Manning, of Raleigh, N. C., and Richard M. Banash, of Boston, Mass., for plaintiff.

Harry H. Barker and J. F. Hendren, both of Elkin, N. C., and Holton & Holton, of Winston-Salem, N. C., for defendants.

CONNOR, District Judge. Plaintiff is a citizen and resident of Massachusetts. Defendants are citizens and residents of North Carolina. The bill, answers, and evidence disclose the following case:

Prior to January 1, 1920, Henry A. Page, Sr., was the owner of a body of land comprising 17 tracts, situate in Moore county, N. C., aggregating 2,800 acres, one of which tracts was known as the "Fletcher farm," containing 576 acres. Page sold the land to one Alexander, taking a mortgage thereon, which was duly recorded, to secure payment

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of $50,000, the balance due on the purchase price. Alexander conveyed the land to plaintiff, subject to the Page mortgage, who conveyed to the Pine Bluff Land Company, a corporation organized under the laws of North Carolina.

On April 28, 1920, the Pine Bluff Land Company conveyed the land to defendant J. H. Allen, who was acting, in making the purchase, for defendant the Realty Exchange & Guaranty Company. This fact was known to plaintiff. The real consideration for this deed was $32,000 cash and a note, secured by mortgage on the land, for $46,650.

Defendant J. H. Allen, at some time subsequent to April 28, 1920, executed and delivered a deed for the land to defendant Realty Exchange & Guaranty Company subject to the Page mortgage, which deed has never been put to registration.

On June 5, 1920, plaintiff and wife sold to defendants J. H. Allen, F. W. Hanes, and the Realty Exchange & Guaranty Company, and by an arrangement made by and between the parties conveyed to defendant F. W. Hanes, the following described property owned by plaintiff and situate in Moore county, N. C.: One lot containing about 2 acres upon which is located a building known as the "Pine Bluff Inn"; one other lot adjoining said lot known as the "Briel Cottage property"; the golf course on a tract containing about 100 acres; and 43 shares of the capital stock of the Midwinter Canoe Club. This deed recites a consideration of "one dollar and other valuable consideration," but the purchase price to be paid therefor was $23,000.

On August 17, 1920, for the purpose of securing the payment of the purchase price, evidenced by three notes, aggregating $23,000, defendant Hanes executed a mortgage on the same property to plaintiff, which was duly proven and recorded.

On the 17th day of August, 1920, the defendant Realty Exchange & Guaranty Company, by its duly authorized attorney in fact, defendant J. H. Allen, conveyed to plaintiff the portion of the 2,800-acre tract conveyed to it by the Pine Bluff Land Company known as the "Fletcher farm," containing 576 acres, for the consideration of $36,000, subject to the Page mortgage on the entire tract. This deed contains the usual covenants of seizin, against incumbrances, and general warranty.

On August 19, 1920, the plaintiff executed to defendant Realty Exchange & Guaranty Company his several notes aggregating $24,000 on account of the purchase price of the Fletcher farm, and for the purpose of securing payment thereof executed a mortgage on the same land, which was duly recorded. This note and mortgage were executed by plaintiff by his attorney in fact, P. P. Pelton. It appears that, by an agreement between the parties, the difference between $24,000 and $36,000, the real price of the property conveyed was to be credited on the mortgage indebtedness for $46,650 held by the Pine Bluff Land Company against the Realty Exchange & Guaranty Company in which plaintiff was interested.

As the result of these dealings between the parties, the Realty Exchange & Guaranty Company held title to the Page land of 2,800

acres subject to the Page mortgage, for which it had paid to the Pine Bluff Company $32,000 in money and executed a mortgage thereon to said company for $46,650.

Plaintiff held title to the Fletcher farm of 576 acres, subject to the Page mortgage on 2,800 acres and the mortgage executed by him to the Realty Company for $24,000. The realty company held title to the Pine Bluff Inn, the Briel Cottage, the golf course, and the stock in the Canoe Club, subject to the mortgage executed by said realty company to plaintiff for $23,000.

The condition of the title to the several pieces of property and the incumbrances thereon were well known to, and understood by, all of the parties. There is no suggestion of any false representation by either of the defendants, or any concealment by them of any fact affecting the title to the property. The Page mortgage covered 2,800 acres of valuable land in a prosperous and rapidly improving section of the state. Plaintiff alleges that he knew that defendants Allen and Hanes, who were stockholders and directors of the realty company, were acting for, and as the authorized representative of, the company.

On April 15, 1921, P. P. Pelton, attorney in fact of plaintiff, and by his direction, surrendered the notes of the realty company held by plaintiff for $23,000 to said company and canceled the mortgage on the property. On the same day the Realty Exchange & Guaranty Company surrendered to plaintiff his note held by said company for $24,000 and canceled the mortgage on the Fletcher farm. Plaintiff executed his note to the Exchange & Guaranty Company for the difference of $1,000. This transaction was conducted by P. P. Pelton, Esq., plaintiff's attorney in fact. Mr. Pelton describes the manner in which the transaction was conducted, and says that he understood the condition of the title to the property and the incumbrance thereon. Mr. Pelton says that the 2,800 acres of land covered by the Page mortgage was "valuable," nearly all peach land, worth probably $60 per acre; that he acted pursuant to plaintiff's instructions. The price of lands depressed in the fall of 1920, "due to the panic."

The result of this last transaction was that plaintiff held the title to the Fletcher farm subject to the Page mortgage on the 2,800 acres, and the Realty Exchange & Guaranty Company held the unincumbered title to the Pine Bluff Inn and other property conveyed by plaintiff. If the Page mortgage had been foreclosed at that time, it would seem that by selling the portion of the land in excess of the Fletcher farm, which a court of equity would have directed, the debt secured by the Page mortgage would have been discharged without resorting to the Fletcher farm.

It does not appear that plaintiff and defendants had any further transactions in regard to the Fletcher farm or the Pine Bluff Inn and other property.

The last transaction between the plaintiff and the defendants was April 15, 1921.

On 19th of May, 1921, the Realty Exchange & Guaranty Company, pursuant to a resolution adopted at a meeting held by the board of directors, who were the only stockholders, on the same day, executed

a deed of trust conveying the Pine Bluff Inn, being the same property conveyed to said company by plaintiff to defendant Wilson, trustee, to secure the payment of $20,000 to defendant the Farmers' & Merchants' Bank. This deed was recorded July 15, 1920, and will be referred to later.

Plaintiff is a lawyer and member of the Massachusetts bar, having in the transaction the advice and assistance of Mr. Pelton, a lawyer residing at Aberdeen and familiar with the property and title thereto. Neither of them suggest that they were misled in respect to the parties, with whom they were dealing, or their relation to the Realty Exchange & Guaranty Company. It is suggested in plaintiff's brief that Mr. Pelton was not authorized to surrender the notes and cancel the mortgage which plaintiff held on the Pine Bluff property and accept in exchange therefor plaintiff's notes and the cancellation of the mortgage on the Fletcher farm, held by the Pine Bluff Land Company. The plaintiff in his bill (paragraph 4) sets forth and refers to this transaction as his own act, making no reference to Pelton's connection with it, as his agent or attorney in fact. In his evidence he says that Mr. Pelton was his "attorney in fact." Mr. Pelton says that he was "acting as plaintiff's attorney and agent to execute papers when he was absent." Plaintiff resided in Boston. Mr. Pelton is asked:

"But you made these deals? A. He directed me what to do. Q. What did you do with the notes? A. I think he had me put them in my safe."

Complainant alleges:

That the deed "executed by Allen acting as attorney in fact for the Realty Exchange & Guaranty Company, for the Fletcher farm contained covenants of warranty and against all incumbrances, with a further agreement with said Allen and Hanes that they would clear the said property of whatever incumbrances there might be against it, so that said MacFarland might have title to it free and clear and in fee simple; * * * that default having been made in the payment of the obligation secured in the mortgage or deed of trust to Henry Page, Sr., the said Page advertised all of the property included in his mortgage, including the Fletcher farm, for sale, and sold the said land at public auction for an amount sufficient only to pay the Page debt."

"That defendants were notified of said sale, and they have failed entirely to protect the title and make good the warranty to him in the conveyance of the said Fletcher farm, and your complainant has therefore received absolutely no consideration for his conveyance of the Pine Bluff Inn, the Briel Cottage property, the property described as the golf course, and the 43 shares of the Midwinter Canoe Club Company."

"That the defendants Allen and Hanes, both individually and as officers of the Realty Exchange & Guaranty Company, represented, agreed to, and assured your complainant that they would severally and jointly secure the release of all mortgages upon the Fletcher farm, hereinabove described, so that the title would vest in your complainant, who relying upon these representations and assurances, executed deeds to the property hereinbefore described and delivered same to said Hanes, the said deed having been by arrangement between defendants made to said Hanes in his own name, but, as your complainant was informed, for the common use and benefit of the said Allen, and the said Realty Exchange & Guaranty Company."

Plaintiff asks that defendants be decreed to reconvey to complainant the Pine Bluff Inn property, the Briel Cottage, the golf course,

and the 43 shares of stock in the Midwinter Canoe Club Company, and to cancel and surrender complainant's note of $1,000, and other and further relief.

Complainant, upon the hearing, testified to the transactions substantially as set out in the bill. He says that in the sale of the Fletcher farm the attention of Allen and Hanes was directed to the existence of the mortgage upon the Fletcher farm as a part of the original Page tract. He further says:

"We discussed that Mr. Allen and Mr. Hanes knew about it because they had taken the whole 2.800 acres subject to the two mortgages (Page mortgage and mortgage on $46,650 to the Pine Bluff Inn Company). They knew as much about it as I did. They agreed to release the Fletcher farm from the operating of the mortgage, all through the conversation it was understood that they were acting for the Realty Exchange & Guaranty Company."

He is asked:

"Did you have any conversation after that with Mr. Allen with reference to recording the deed to the Realty & Guaranty Company for the Fletcher farm, the deed which was made by him to the Realty & Guaranty Company, which deed covered the 2,800 acres, including the Fletcher farm?"

To which he answered:

"I talked with him at least twice over the phone; said he would record it."

Upon cross-examination he is asked:

"You knew of these transactions when you took that deed; there was nothing concealed? A. All what transactions? Q. These mortgages? A. I knew everything I had a part in."

Mr. Pelton, a practicing attorney in Aberdeen, who represented and acted as attorney in fact for complainant in all of the transactions, was examined as a witness for complainant. He says that he had knowledge of the Page mortgage and the condition of the title to all of the lands involved in the several trades. He is asked:

"Did you see Mr. Allen or Mr. Hanes with regard to getting a release of the Fletcher farm from the Page mortgage? A. I saw Mr. Allen at least a half dozen times and urged him by letter and in person. Q. What did he tell you? A. Both before and after the transaction he told me he was trying his best to get Mr. Page to release it, and that as soon as he could put up the necessary securities Mr. Page would release it. I went to Winston-Salem to see him about it."

J. H. Allen testified that the Realty Exchange & Guaranty Company made a trade by which it disposed of 700 acres of the 2,800-acre tract, outside of the Fletcher farm, for which it got $30,000 of notes. This was subsequent to the sale to plaintiff. That he went to Mr. Mitchell, cashier of the People's Bank of Winston, whom he considered a very conservative man, and asked him if he would consider the notes good if he took them on Wimbish and Alexander. He said that he considered them good. That witness expected to take these notes and get the cash on them "and regulate it with Mr. Page." He hoped in this way to relieve the Fletcher farm from the Page mortgage. He considered it his duty to do so. He considered the recital in the deed

that the title was free and clear constituted an obligation to deliver the Fletcher farm free and clear; that he tried his best to do so, did everything he could, but was never able to make any arrangement with Henry Page, Sr., whereby he would release his mortgage on the Fletcher farm. He knew that, if he failed to get a deed free and clear for the Fletcher farm, there was a total failure of consideration for the conveyances by MacFarland of the Pine Bluff Inn and other property. The bill herein was filed January 29, 1921.

When sold under the Page mortgage, the entire 2,800 acres, including the Fletcher farm, brought about $55,002. The case as between the complainant and defendants Hanes, Allen, and the Realty Exchange & Guaranty Company comes to this:

Complainant purchased from defendants the Fletcher farm, which constituted a part of a tract of 2,800 acres, upon which there was a mortgage on record for $50,000 of which complainant had notice and actual knowledge. He relied upon the promise of Hanes and Allen, acting for themselves, and the Realty Guaranty & Exchange Company, to secure a release of the land from the lien of the mortgage, and on the covenants against incumbrances, and covenants of general warranty. He does not allege that there was any concealment of any fact connected with the title or incumbrances on the land.

[1] He does not allege, or is there evidence to sustain such allegation, that Allen and Hanes did not, in good faith, intend to endeavor to have the Fletcher farm released from the mortgage. The land had been sold on April 28, 1920, and conveyed by the corporation of which complainant was president, the deed being signed by him, for $32,000, and a note secured by mortgage for $46,650, subject to the Page mortgage of $50,000, aggregating $128,650. This was but four months before the purchase by plaintiff of the Fletcher farm for $24,000, leaving a margin of value of the balance of the tract of more than $100,000. It is so well known that we may take notice of the fact as a part of recent history that during the early months and summer of 1920 real estate in that section of the state was selling at unprecedentedly high prices. The "slump" in prices came in the latter part of the year 1920. The land was sold to discharge the Page mortgage September 5, 1921, under decree of the court. Mr. Pelton says that at that time land had, in the opinion of those "in touch with the situation, depreciated 50 per cent. It was a stagnant market."

Subsequent to the transactions recited the Realty Exchange & Guaranty Company executed a deed for 700 acres of the Page land, subject to the Page mortgage to the Insurance & Realty Company, taking no mortgage thereon to secure the purchase money. This company executed a mortgage on the same land to the Twin City Bank for a recited consideration of $60,000. These transactions did not affect the plaintiff, because they were rendered of no value when the Page land was sold for an amount sufficient only to discharge the Page mortgage. In a suit brought in the state court it was decided that the mortgage executed by J. H. Allen, attorney for the Realty Exchange & Guaranty Company, to the Pine Bluff Land Company for $46,500, was invalid because his power of attorney did not authorize

him to execute it. This did not affect the rights of plaintiff. The failure of the Realty Exchange & Guaranty Company to record the deed executed by J. H. Allen did not injure or affect the right of plaintiff, because no subsequent purchaser has set up any claim for the Fletcher farm, which was a part of the Page land. The rights and equities of all persons dealing with the Page land were extinguished by the sale under the Page mortgage, which took precedence over all persons dealing with the land. Defendants made no promise not to sell or further incumber the Page land in excess of the Page mortgage.

In Atlantic Delaine Co. v. James, 94 U. S. 207, 24 L. Ed. 112, it is said:

"Canceling an executed contract is an exertion of the most extraordinary power of a court of equity. The power ought not to be exercised except in a clear case, and never for an alleged fraud, unless the fraud be made clearly to appear; never for alleged false representations, unless their falsity is certainly proved, and unless complainant has been deceived and injured by them."

In Foy v. Stephens, 168 N. C. 438, 84 S. E. 758, it is said:

"Fraud should be positively charged, and not by implication."

In the absence of any allegation or proof of such conduct as a court of equity regards as fraudulent, it was said by Ruffin, J., in Clanton v. Burges, 17 N. C. 13:

"A purchaser who has received a conveyance, and is in possession and not disturbed, will not be relieved on the mere ground of defect of title, where there was no fraud or eviction, but must rely on his covenants. Much more must it be so when the very defects of title alleged were known to the party at the time he took his conveyance. The contrary would amount to this: That no obligatory contract can be made unless the vendor's title is perfect, and that any defect, secret or notorious— so notorious as to affect the price agreed on—should put it in the vendee's power to rescind, after receiving a conveyance, with covenants against those defects."

See Hughes v. McNider, 90 N. C. 248, 252.

In Leach v. Johnson, 114 N. C. 88, 19 S. E. 239, 41 Am. St. Rep. 784, defendant contracted to purchase a tract of land and executed his notes for the purchase price, paying a part in cash and took plaintiff's obligation to make title. Before the payment of the notes he discovered that there were docketed judgments constituting liens on the land. In an action upon the notes he set up as a defense the defect in plaintiff's title. The court said:

"A different principle applies in the case of a discovery of incumbrances before the execution of the conveyance and afterwards. * * * The reason is that after the deed has passed the vendee must rely on his covenants; but before it has passed the law will not compel a man to take a defective title."

Complainant relies upon his averment that there was a failure of consideration; that, as the Page mortgage absorbed the entire 2,800 acres, including the Fletcher farm, he received no consideration for parting with the title to the Briel Cottage and other property conveyed to Hanes, Allen, and the guaranty company.

[2] Passing for the present the consideration of the question whether, upon the facts alleged by complainant, there was, in a legal sense, a failure of consideration, it is uniformly held that mere failure of consideration, in the absence of fraud, misrepresentation, or concealment of essential facts, is not sufficient to base an appeal to a court of equity to rescind and cancel an executed contract.

In Foy v. Haughton, 85 N. C. 169, it is held that:

"When the defendant had given plaintiff his bond for the payment of money in consideration of a quitclaim deed * * * to land, * * * he cannot defend an action on such bond on the ground of failure of consideration, in that the plaintiff had no title to the land, without showing that, while in the exercise of due diligence on his part, he had been misled by the fraudulent pretensions of the plaintiff to a title which he knew he did not possess."

Ruffin, J., said:

"If there be on the part of the vendor any act of actual misrepresenation, or other positive fraud in regard to a material matter reasonably relied on, then the purchaser will be afforded relief; otherwise the maxim of caveat emptor applies in all courts, whether of law or equity."

In Howard v. Turner, 125 N. C. 107, 34 S. E. 229, Furches, J., said:

"It was insisted for the plaintiff that the jury having found that the deed from plaintiff to defendant was without consideration, this fact alone raised an equity in favor of the plaintiff sufficient to set aside the deed. We do not think so. A deed in proper form is good, and will convey the land described therein, without any consideration. This seems to be the settled law in this state. * * * The want of consideration may be shown as evidence of fraud, although the lack of consideration does not of itself constitute fraud."

See McLeod v. Bullard, 84 N. C. 515.

In Harvard Law Review, vol. XXXVI, No. 4 (488), reference is made to Sweeny v. Patton (Va.) 113 S. E. 715, in which a deed was executed in consideration of the promise of the grantee to abandon the use of intoxicating liquor and to live on, manage, and work the farm of the grantee. An aged aunt purchased a farm, taking the deed to herself, remainder to the grantee in fee. The grantee wholly failed to perform his promise. Held that the defendant's failure to perform the promise makes it unconscionable for him to retain the title. The editor collects decisions of several state courts, in which it is held that an unfulfilled promise to support the grantor is a basis for equitable relief, cancellation, and a number of cases contra.

An examination of the cases discovers that in almost every one in which the consideration of the conveyance is a promise to support the grantor and a failure to perform the promise relief is based upon allegation and proof of fraud, mental weakness, or actual misrepresentation. These elements are found in Sweeny v. Patton, supra; Buffalow v. Buffalow, 22 N. C. 241, in which Ruffin, C. J., sets forth, with his usual clearness and vigor of language, the character of the transaction which he denounces as an "object of animadversion". Deaton v. Munroe, 57 N. C. 39; Mullins v. McCandless, 57 N. C. 425; Futrill v. Futrill, 58 N. C. 63.

If the promise made by Hanes and Allen to have the Fletcher farm released from the lien of the Page mortgage had been incorporated in the deed, the question would be presented whether such language constituted a condition subsequent or a covenant. Upon this question the writer had occasion, while a member of the Supreme Court of this state, to make a careful examination of the authorities, in Helms v. Helms, 135 N. C. 164, 47 S. E. 415, and upon rehearing 137 N. C. 206, 49 S. E. 110. In that case the consideration upon which the deed was executed was the promise by the grantee to support the grantor during her natural life. Plaintiff alleged that it was also understood between the parties that the words "and if he failed to do so said deed would be void." This averment was not sustained. The plaintiff contended that the promise to support, as expressed in the deed, constituted a condition subsequent upon the breach of which the estate of the grantee was divested. Quoting from Kent's Com. (13th Ed.) p. 130, it is said:

"Conditions subsequent are not favored in the law and are construed strictly because they tend to divest estates. If it be doubtful whether a clause in a deed be a covenant or a condition, the courts will incline against the latter construction; for a covenant is far preferable to the tenant."

As the result of a careful examination of many well-considered decisions, the conclusion was reached that, unless the terms of the grant will admit of no other reasonable interpretation, they will not be construed as conditions. In cases in which the consideration consists of the promise to support the grantor:

"Courts of equity will relieve upon slight evidence of fraud, and courts of law will protect them as best they can by charging the support on the land. It would, however, render titles uncertain and precarious to construe into a condition that which is a matter of consideration or, at most, a covenant."

In Gardner v. Knight, 124 Ala. 273, 27 South. 298, McClellan, C. J., said:

"The fact that J. C. Knight failed to carry out his undertaking or that he and his wife refused to carry out the undertaking in consideration of which the conveyance was made is no ground for the cancellation of the conveyance. The undertaking was, in no sense, a condition subsequent upon the breach of which the conveyance was void or voidable, but at most it was a mere covenant on the part of J. C. Knight to pay, acquit, and satisfy the price of the land in a particular way, or rather the consideration upon which the deed was made; and there is no more room or reason for a cancellation of the conveyance for default in the satisfaction of such a consideration or for failure to carry out such an undertaking than there would have been had the consideration been so much money and the purchaser had made default in the payment thereof. In both cases the remedy of the vendor would be on the undertaking, and not by way of cancellation and revestiture of title in himself."

In a well-considered opinion by Gaston, J., in Green v. Thompson, 37 N. C. 365, he says:

"A court will not annul dispositions of property, because they are improvident, or such as a wise man would not have made or a man of nice" sense of "honor have consented to receive; but all the contracts of an

individual, even his gratuitous acts, if formally executed and no power of revocation reserved, are binding, unless they can be avoided because of" fraud, etc.

If plaintiff had retained the mortgage executed by Hanes for the purchase money, he would have been protected against loss by the reason of the failure to perform the promise made August 19, 1920, by the grantors, to relieve the Fletcher farm from the Page mortgage.

On April 15, 1921, eight months after the purchase of the Fletcher farm, with knowledge of the failure of Hanes to relieve the land from the Page mortgage, he surrendered and canceled the notes and mortgages which he held on the Highland Park Inn and the Briel Cottage and other property in consideration of the surrender by Hanes and others of his notes and mortgage on the Fletcher farm. There is no suggestion of any fraud, misrepresentation, or unfulfilled promise inducing the release and cancellation of the mortgage by plaintiff by his attorney in fact. His contention that Mr. Pelton was not authorized and empowered as his attorney in fact to surrender the notes and cancel the mortgage is contradicted by the allegation of his bill, by his own evidence, and by Mr. Pelton.

[3] Counsel have not called to my attention, nor have I been able to find, any case in which a court of equity has rescinded an executed contract and canceled a deed for land because of a failure of consideration, in the absence of allegation or evidence of fraud, misrepresentation, concealment of essential facts, or of any such relationship between the parties as raised a presumption of fraud, or casts upon the person taking the deed the duty of rebutting a presumption of fraud or undue influence. It is a hardship on complainant that, as a result of the failure of Hanes and Allen to comply with their promise to have the Fletcher farm released from the Page mortgage, he lost the land. But he purchased with full knowledge of the existence of the mortgage, and every other fact connected with or affecting the title which he was taking; he sustains loss, as does every person who parts with property by relying on the promise of the person to whom he conveys it to perform such promise. The courts uniformly hold that a party will not be permitted to rescind a sale of property merely because the purchaser fails to pay for it, in the absence of any allegation and evidence that, at the time he purchased, he had no intention to pay or resorted to some fraudulent scheme or device to secure the execution of the deed. The complainant has a perfect remedy at law upon the promise of Hanes and Allen and upon the covenant of warranty by the Realty Exchange & Guaranty Company. The fact, if it be so, that they have, since making the promise or covenant, become insolvent, does not entitle him to a decree canceling his deed.

On May 19, 1921, the Realty Exchange & Guaranty Company executed a deed in trust to defendant W. T. Wilson conveying the Briel Cottage and other property conveyed by complainant to said company to secure the payment of $20,000, evidenced by four notes of $5,000 each payable to the defendant Farmers' & Merchants' Bank of Elkin, N. C., which was recorded July 15, 1921.

Plaintiff, on March 28, 1922, filed an amendment to his bill alleging

that it appeared from the answer of Hanes and Allen and the Realty Exchange & Guaranty Company that the deed of trust was given to W. T. Wilson as trustee to secure four notes of $5,000 each to the defendant Farmers' & Merchants' Bank of Elkin, N. C., and that Wilson had theretofore been made a party defendant; that neither the said trustee nor the bank were purchasers for value and in good faith, for the reason that, at the time said deed of trust was made to said trustee and at the time said loan was made by said bank to the Realty Exchange & Trust Company, the defendant Hanes was president of said bank and knew all and singular the facts set forth in complainant's bill, and by such knowledge of the said Hanes, president, the bank was fixed with notice of the facts upon which plaintiff's rights and equities were based, and said trustee and the bank took title with notice thereof.

The Farmers' & Merchants' Bank contends that the notes secured by the deed of trust to defendant W. T. Wilson represent a valid indebtedness by the Realty Exchange & Guaranty Company, and the deed is a valid incumbrance on the property.

It will be observed that the deed of trust to Wilson was executed May 19, 1921, just 30 days after the cancellation of the mortgage on the same property. It was, not recorded until July 15, 1921. The bill herein was filed June 29 and served with the subpœna July 7, 1921. The filing of the bill and service thereof on the defendants was notice to them of the rights of the plaintiff as claimed in the bill.

On May 19, 1921, defendant Realty Exchange & Guaranty Company executed four notes of $5,000 each, payable to defendant Farmers' & Merchants' Bank of Elkin, N. C., due three, four, five, and six months from date respectively.

On May 26, 1921, said bank was, pursuant to proceedings instituted under the statutes of North Carolina, placed in the hands of a receiver. The notes had not been at that time entered up and numbered on the records of the bank.

Some time thereafter the receiver was discharged, and the assets of the bank, including said notes, were returned to, and are now the property of, the bank. Mr. Messick, the present cashier, produced the books of defendant bank kept prior to his connection with it, which began with the reorganization November, 1921. It is difficult to ascertain from an inspection of the books how the debt recited in the resolution accrued. It appears that the auditor, after the receivership, entered the notes on the schedule. J. H. Allen undertakes to explain the dealings between defendant bank and the Realty Exchange & Guaranty Company out of which the $20,000 debt accrued. He says that he was secretary and treasurer of the realty company; that the company did not receive the money on the day the notes were given or thereafter, but before that day.

"Are you prepared to state that the Realty Exchange & Guaranty Company received $20,000 from the Farmers' & Merchant's Bank of Elkin, prior to the execution of this deed of trust? Yes, sir; there was $15,000 of it in certificates there. They are certificates issued by the bank, but issued on notes? On whose notes? That we were guaranteeing for

the company. Were they company notes or individual notes? We had individual notes. But were they the company's notes? Supposed to be— that was the understanding. But the company's name did not appear? Not on all of them, because it looked like the bank was making too large loans. At the time these notes were originally given, and the bank issued certificates of deposit, or let the company have the proceeds of these notes, this resolution authorizing the execution of the deeds of trust had not been passed by your board of directors? No, sir; that had not been passed. At the time these notes were executed and your company received the proceeds you were under no obligation to execute this deed of trust to the bank until this resolution was passed? Yes, sir; in a way. Mr. Hanes would not turn the property over because of the fact that he— But the bank extended this credit to the officers as individuals on their individual notes, and to the company on its own, indorsed by its officers, without requiring, at the time, the execution of this deed of trust? Yes, sir."

The Realty Exchange & Guaranty Company was organized April 24, 1920, by defendant J. H. Allen and A. Chatham and A. W. George, who was also president of defendant bank until it closed and went into the hands of a receiver. Allen was one of the directors of the realty company. The capital stock was fixed at $200,000, divided into shares of the par value of $20 each, of which George, Allen, and Chatham each held 10 shares. It does not appear whether any other shares were issued.

Upon this organization the minutes show that A. W. George presented a proposition from J. H. Allen for the sale to the company of the 2,800 acres of land known as the Pine Bluff land for $175,000, held by him upon an option. His proposition was submitted April 24, 1920, subject to withdrawal after 10 days.

George introduced a resolution, which was unanimously adopted, accepting the proposition and directing Allen to have a deed executed conveying the property to the company, and that the price thereof be paid out of the funds of the company; it assuming the $50,000 Page mortgage.

On May 15, 1920, at a meeting of the directors, a resolution was adopted directing the execution of a power of attorney to J. H. Allen, authorizing him to take entire charge of the lands of the company. Allen never received the purchase money for the land. Allen testified that only $20,000 of the capital stock of the company was paid in. It does not appear who paid this amount.

On May 19, 1921, at a meeting of the stockholders and directors of the company, Chatham, Hanes, and Allen being present, Chatham resigned as director, and Hanes was elected to fill the vacancy. It was at this meeting that the resolution was adopted to execute the deed of trust to Wilson.

Allen testified that Hanes bought a deed for the Pine Bluff Inn and other property conveyed to him by the plaintiff, but it had not been recorded. A certificate from the register of deeds from Moore county showed that the only conveyance made by F. W. Hanes as grantor was a mortgage from him to MacFarland August 17, 1920, which had been canceled. It seems therefore, that the legal title to the Pine Bluff Inn property is yet outstanding in F. W. Hanes, upon a parol trust for the Realty Exchange & Guaranty Company.

It is manifest from the pleadings and evidence that plaintiff has a cause of action against defendant Realty & Guaranty Company for breach of a warranty in the deed of August 17, 1920, for the Fletcher farm and against Allen and Hanes for their failure to cause the mortgage held by Page on the Fletcher farm to be released.

The evidence in regard to the time, circumstances, and manner in which the deed of trust to defendant Wilson was executed raises a serious question in regard to the genuineness of the alleged indebtedness to defendant bank sought to be secured thereby and the alleged fraudulent intent on the part of the stockholders and officers of the Realty Exchange & Guaranty Company with which this deed was executed. It is also manifest that the said company is insolvent.

I am of the opinion that this cause should be retained and the injunction issued herein on June 29, 1920, and continued by an order made herein on July 20, 1920, enjoining the defendants, their agents and attorneys, from disposing of, by sale or mortgage or assignment, any of the property described in the bill herein, to wit, the Pine Bluff Inn property, the Briel Cottage property, the golf course property, and the 43 shares of stock of the Midwinter Club, all of the said property being situate in Sand Hill township, in the county of Moore, N. C., be continued until the further order of this court.

That plaintiff has leave to file, within 90 days from this date, a supplemental bill herein, or, if so advised, institute an action at law against the defendants on the warranty in the deed from defendant Realty Exchange & Guaranty Company and on the alleged promise of defendants J. H. Allen and F. W. Hanes to cause the mortgage held by Henry Page on the Fletcher farm to be released and to set aside and vacate the deed of trust executed by the Realty Exchange & Guaranty Company to defendant W. T. Wilson, and that this cause be retained for further orders. Let a decree be drawn in accordance herewith.